MASSENBURG *v.* THE COMMISSIONERS OF BIBB COUNTY.

The office of county treasurer having been, under the law existing previous to the adoption of the constitution of 1868, recognized as a county office, and that office not having been abolished, but, on the contrary, recognized by that constitution, it became and was thereby established as a constitutional office, and could not thereafter, while that constitution was of force, be abolished by an act of the legislature.

May 15, 1895.

Petition for *mandamus*.   Before Judge HARDEMAN. Bibb county.   March 15, 1895.

The General Assembly passed an act abolishing the office of treasurer for Bibb county, which was approved on February 23, 1876. (Acts 1876, p. 313.) An amendment to this act was passed, and approved on September 26, 1883. (Acts 1882–3, p. 514.)

On the first Wednesday in January, 1895, C. B. Massenburg was a candidate for the office of county treasurer, and received a majority of all the votes cast thereat for said office. No attack or contest on the returns of the election was filed; and the governor, on January 23, caused to be issued a commission to Massenburg as county treasurer, accompanying the same with the requisite *dedimus potestatem,* and forwarded the same to the commissioners of Bibb county. On the next day Massenburg appeared before the commissioners and tendered to them a good and sufficient bond in the sum of $225,000, conditioned according to the statute in such case, to faithfully discharge the duties of the office; and demanded to be qualified as county treasurer. The commissioners refused to comply, upon the ground that they did not recognize the commission as valid, for the reason that the office of county treasurer did not exist under the law. Whereupon Massenburg brought his petition for *mandamus* to require them to accept the bond, qualify him, and place him in possession of books, papers, money, etc., appertaining to the office. On the hearing it was admitted that the county has been acting under the statutes of 1876 and 1883 since their passage; that the governor issued the commission without prejudice; and that the office of county treasurer was considered as an elective office, and, until the passage of the act of 1876, was filled by elections by the people of the county under the constitution of 1868. The court denied the petition for *mandamus,* holding the acts in question to be constitutional; to which ruling Massenburg excepted.

ANDERSON & ANDERSON and DESSAU & HODGES, for plaintiff. HARDEMAN, DAVIS & TURNER, for defendants.

ATKINSON, Justice.

It appears from the record in this case, that the plaintiff in error, at the last general election for county officers held in this State, was elected by the people of Bibb county to the office of county treasurer for that county. A commission issued to him, and, in order to qualify, it was necessary that his bond be approved by the county commissioners of Bibb county. He tendered a bond, which, so far as the record discloses, was in all respects satisfactory. This bond the commissioners declined to approve, assigning as a reason, that by an act passed by the General Assembly in 1876 the office of county treasurer for that county was abolished; that they did not now recognize the existence of such an office; and declined to qualify the plaintiff in error, who claimed to have been elected. He thereupon filed a petition, praying for a *mandamus nisi* as against the county commissioners, requiring them to show cause why said bond should not be approved and he should not be qualified as county treasurer. The judge of the superior court issued a *mandamus nisi*, and, in response, the commissioners answered the non-existence of the office alleged, because of its abolition by the act of the legislature passed as aforesaid. Upon hearing the petition and answer, with the agreed statement of facts set forth in the official report, the circuit judge denied a *mandamus* absolute, and from that judgment this writ of error is taken.

It is insisted by the plaintiff in error, that the act of 1876, which is relied upon by the defendants in error to defeat his claim to the office of county treasurer, is unconstitutional, as being in conflict with article 9, paragraph 1, of the constitution of 1868, which constitution was then of force in the State. Whether or not this act is unconstitutional, depends upon whether, at the

time of its passage, the office of county treasurer was a constitutional office. If it was not, it was subject to the discretionary power of the General Assembly and might be abolished at its pleasure. If it was a constitutional office, it was beyond the reach of legislative discretion. A constitutional office may become such, either by virtue of its creation as such by express provisions of the constitution, or, being already in existence as a legislative office, it be established and recognized, and the term and mode of selection be prescribed by a constitution adopted subsequent to its creation by the legislature; it then becomes a constitutional office, and thereafter not subject to control or modification by legislative enactment. Where the constitution prescribes the manner in which a particular public functionary is to be elected, or prescribes the terms during which he shall hold office, the legislature is thereafter powerless to modify, enlarge or diminish that which is established by the constitution. It has no power to shorten the term of a constitutional office (Howard v. State, 10 Ind. 99; Cotton v. Ellis, 7 Jones (N. C.), 545; State v. Askew, 48 Ark. 82); nor practically abolish the office by repealing provision for salary (Reid v. Smoulter (Pa.), 18 Atlantic Reporter, 445); nor extend the constitutional term (People v. Bull, 46 N. Y. 57; Goodin v. Thoman, 10 Kan. 191; State v. Brewster, 44 Ohio St. 589); nor provide for the choice of officers a different mode from that prescribed by the constitution (People v. Raymond, 37 N. Y. 428; Devoy v. New York, 35 Barb. 264; 22 How. Pr. 226; People v. Blake, 49 Barb. 9; People v. Albertson, 55 N. Y. 50). If, therefore, the people in their sovereign capacity, in convention assembled, do by the terms of an organic law, established by them and for them, reserve unto themselves the right of election to particular offices, the legislature cannot thereafter interfere with this reserved right and provide other

means than those established by the constitution for the election of incumbents to such offices, even though there be no negation of this right of legislative interference expressly stated in the terms of the constitution. The reservation of the right itself is a sufficient safeguard against the encroachments of legislative power, inasmuch as such reservation of itself operates as a denial to the legislature of the right of interference. The legislative powers, with respect to subjects left under the legislative control, are coextensive with the limits of the State, and are circumscribed only by the wise discretion of the General Assembly itself; but respecting those rights and those things concerning which the constitution has itself made provision, the legislature is without power. It becomes then important, in the first instance, to inquire, is the office of county treasurer a county office, and, if so, how and by what means established? By a decision of this court, *Bradford* v. *The Justices*, 33 *Ga.* 332, a public officer is defined to be "an individual who has been appointed or elected in a manner prescribed by law, who has a designation or title given him by law, and who exercises the function concerning the public assigned to him by law." A county officer then is a public officer, whose duties are limited by law to a single county. By the act of March 8th, 1865, the legislature declared that thereafter "the county treasurers in the several counties of this State shall be elected by the people for the term of two years, the election to be held on the first Wednesday in January, 1866, and thereafter on the day that other county officers are elected." This was a distinct recognition of the county treasurer as a public officer, in which his term was prescribed, and in which it was provided that there should be uniform elections of this particular public officer, by the people, throughout the State. Whatever doubts may have existed in the public mind theretofore as to whether a county treas-

urer was a county officer at all, or a simple fiscal agent of the old inferior court and subject to removal at its will and pleasure, such doubts were removed by the passage of this act.    If previous to the passage of this act he was the mere creature of the inferior court, and his office subject to abolition, and the incumbent to removal at its pleasure and discretion, from the date of the passage of this act he became and was a legislative officer, and his office was subject to be abolished only at the will and discretion of the General Assembly.    According to the definition of a public officer as stated by this court, he met all the requirements and all the conditions of that definition; he was indeed a public officer. By the uniform law of the State, there was one of such officers to be elected biennially by the people for each county in the State.    That was the exact condition of the office of sheriff, clerk of the superior court, tax-collector, coroner, indeed all county officers.    The act of 1865 remained and was of force at the time of the adoption of the constitution of 1868; and by that constitution it is provided, that the officers recognized as existing by the laws of this State, and not abolished by this constitution, shall, where not otherwise provided for in this constitution, be elected by the qualified voters of their respective counties or districts, and shall hold their offices for two years.    The office of county treasurer was not abolished by the constitution of 1868, nor was it otherwise therein provided that the incumbent should be elected other than by the qualified voters.    It will be seen then that, being recognized as a county officer and elected as such by virtue of the act of 1865, and the office not having been abolished by the constitution of 1868, and no other provision having been made therein for the election of county treasurer, by its very terms it was provided that county treasurers should be elected by the qualified voters of their respective counties, and

should hold their offices for two years. So it will be observed, that in this process of evolution the private citizen progressed to the point where he became a public officer, acting simply as the fiscal agent of the inferior court and completely under its control as the general financial agent of the county. The next step in official progression promoted him to the dignity of a legislative officer, and this was accomplished by the act of 1865; and finally the whole process of evolution was completed, when, by the constitution of 1868, he was recognized as a constitutional officer, and freed from legislative discretion and control. Once established as a constitutional office, with its term fixed and the mode of election prescribed, the legislature had no power to abolish the office of county treasurer. It is insisted, however, inasmuch as the constitution of 1868 provided for the appointment of boards of county commissioners, leaving it to the General Assembly to confer upon them such powers as it saw proper, that this provision implied a reserved right to impose upon such commissioners the duties required to be performed by any other county officers, and therefore it was within the legislative discretion to transfer the duties of the county treasurer to these commissioners, or to such other person as they might see proper to choose for the discharge of those duties. It is a sufficient answer to this contention to say, that the office of county treasurer being a constitutional office, it cannot be abolished by the legislature by direct enactment, nor could the office be indirectly abolished by transferring the duties of that office to some other person not chosen in the manner prescribed by the constitution; but the stronger and more convincing reason against this contention is, that the people in the constitutional convention, in framing the organic law, have reserved the right to elect a county treasurer, and dismiss him at their will

at the expiration of the term for which he is elected; whereas the General Assembly, transcending its authority, has undertaken to extend the term beyond that prescribed by the constitution for county officers generally, and as well to deprive the people of the county of Bibb of the privilege of electing this particular county officer. The public conscience is not more sensitive upon any given subject than that of taxation, and its correlative, the keeping and disbursement of public money. People await the coming of the tax-gatherer with the same resignation that they witness the approach of death; they realize that both are inevitable and equally inexorable; and it is a wise provision of the constitution which enables them to elect and dismiss at pleasure the man upon whom rests the grave responsibility for the keeping and proper disbursement of public money. We realize the gravity of a situation which requires the judiciary to declare unconstitutional an act of the General Assembly. We recognize the principle, that if by any reasonable interpretation an act of the General Assembly can be upheld, it is the duty of the court to sustain it; but we are not unmindful, and cannot be, that the same constitution which confers upon the General Assembly the power to make laws, imposes upon this court the imperative duty to declare them void if they contravene the provisions of the organic law. It is insisted that the constitutionality of this act should be upheld because of the contemporaneous construction given to it, and to the provisions of the constitution now under review, by those who administered both in their early history. Such considerations are not without their value in arriving at a true interpretation of statutes; but we think the conflict between this statute and the constitution under which it was passed, is so direct, that such considerations ought not to control the judgment of the court. Nor does the fact that the act

under consideration has never before been called in question justify its present recognition as a valid constitutional enactment. A patient and long-suffering acquiescence by the public in a legislative encroachment upon rights reserved by the constitution, should appeal but lightly to the judicial sense; for it should be remembered that people are little disposed to disturb an existing condition which does not immediately affect their personal interests, and it should be also remembered that no prescription can sanctify an act of usurpation, and no limitation bars the right of a people to reassert its sovereignty. We conclude, therefore, that in the passage of the act of 1876, by which the office of county treasurer of Bibb county was sought to be abolished, and in the passage of the act of 1883, which was amendatory of the act of 1876, the General Assembly transcended its powers under the constitution; and so believing, it is the duty of this court so to declare.

Let the judgment of the court below be   *Reversed*.