[Civ. No. 5512. Second Appellate District, Division Two.—March 4, 1927.]

## W. A. SLOANE, etc., Petitioner, v. C. R. HAMMOND, County Auditor, Respondent.

[1] OFFICES AND OFFICERS—COUNTIES—DISTRICT ATTORNEY'S SPECIAL FUND—USE BY SPECIAL COUNSEL APPOINTED BY ATTORNEY-GENERAL —CRIMINAL LAW.—Special counsel appointed by the attorney-general under section 472 of the Political Code to prosecute criminal charges against the district attorney of a county has a right to resort to the fund contemplated by section 4308 of the

---

1. See 7 Cal. Jur. 532.

Political Code for use of district attorneys, and is not limited to the provisions of subdivision 3 of section 4307 of the Political Code, making necessary expenses in criminal proceedings county charges.

[2] ID. — DISTRICT ATTORNEY — DISQUALIFICATION — EMPLOYMENT OF SPECIAL COUNSEL — CONSTITUTIONAL LAW. — Section 472 of the Political Code, authorizing the attorney-general to employ special counsel to conduct criminal prosecutions in a county, where the district attorney is disqualified, does not violate section 4 of article XI of the constitution, requiring uniformity in county governments, since such section is uniform in its application to every county in the state.

[3] ID.—CODE PROVISIONS—STATUTORY CONSTRUCTION.—Section 472 of the Political Code, authorizing the attorney-general to employ special counsel to conduct criminal prosecutions in a county, where the district attorney is disqualified, is consistent with sections 4000, 4001, 4003, and 4005 of the Political Code, relating to powers of counties.

[4] ID.—CRIMINAL LAW—PROSECUTION OF DISTRICT ATTORNEY—SUPERVISION BY ATTORNEY-GENERAL — SPECIAL COUNSEL — EXERCISE OF STATE POWERS.—Special counsel appointed by the attorney-general, under section 472 of the Political Code, to prosecute a criminal offense against the district attorney of a county, is engaged in all that he may do under his appointment in the exercise of state, and not county, powers, in view of subdivision 5 of section 470 of the Political Code, which requires the attorney-general to exercise supervisory powers over district attorneys, and subdivision 1 of section 4153 of the Political Code and section 684 of the Penal Code, to the effect that criminal actions are prosecuted by the state.

[5] ID.—COUNTIES—DISQUALIFICATION OF DISTRICT ATTORNEY—CONSTITUTIONAL LAW.—Section 472 of the Political Code, authorizing the attorney-general to employ special counsel to conduct criminal prosecutions, where the district attorney is disqualified, is not in violation of section 5 of article XI of the constitution as emasculating an office of an officer required by the constitution to be appointed or elected under the system of county governments, since such appointment confers authority to function only as to matters concerning which the district attorney is disqualified, and does not emasculate the office of district attorney.

[6] ID.—COUNTY OFFICERS—CONSTITUTIONAL LAW.—Special counsel employed by the attorney-general to conduct a criminal prosecution where the district attorney is disqualified, in accordance with section 472 of the Political Code, is not a "county officer" within section 4022 of the Political Code, enacted pursuant to section 5

4.  See 3 Cal. Jur. 564, 575.

of article XI of the constitution, requiring official bonds by county officers, including district attorneys.

[7] ID.—COUNTIES—CONTROL OF COUNTY FUNDS—CRIMINAL LAW—DIS-QUALIFICATION OF DISTRICT ATTORNEY—DELEGATION OF POWERS—CONSTITUTIONAL LAW.—Special counsel appointed by the attorney-general, under section 472 of the Political Code to prosecute criminal offenses wherein the district attorney is disqualified, is not within the strict letter of section 13 of article XI of the constitution, forbidding delegation to any individual the power to control or in any way interfere with county money, property, or effects.

[8] ID.—CRIMINAL LAW—PROSECUTION OF DISTRICT ATTORNEY—USE OF SPECIAL FUNDS OF COUNTY—APPEAL.—The question of the right of special counsel employed by the attorney-general, in accordance with section 472 of the Political Code, to criminally prosecute the district attorney of a county, to use the special funds contemplated by section 4308 of the Political Code for the use of the district attorney, does not become moot because of the subsequent conviction of the district attorney, where an appeal is pending therefrom, since such appeal may result in reversal and require another trial, creating a necessity for the use of the fund.

---

(1) 15 C. J., p. 568, n. 48.    (2) 36 Cyc., p. 1002, n. 28.    (3) 18 C. J., p. 1339, n. 79.    (5) 18 C. J., p. 1340, n. 80.    (7) 12 C. J., p. 844, n. 51, p. 905, n. 90; 20 C. J., p. 402, n. 75; 35 C. J., p. 278, n. 70; 35 Cyc., p. 1526, n. 91.    (8) 1 C. J., p. 973, n. 13; 12 C. J., p. 753, n. 50.

APPLICATION for a Writ of Mandamus to compel the Auditor of San Diego County to issue a warrant on the special fund contemplated by section 4308 of the Political Code to provide funds for use by special counsel appointed by the attorney-general to criminally prosecute the district attorney. Writ granted.

The facts are stated in the opinion of the court.

W. A. Sloane, *in pro. per.*, for Petitioner.

Albert J. Lee, Deputy District Attorney, for Respondent.

WORKS, P. J.—A criminal offense, claimed to have been committed by the district attorney of the county of San Diego, was under investigation by the grand jury of the county, whereupon the attorney-general "appointed and em-

ployed" the petitioner in this proceeding "to represent the people and the prosecution as special counsel . . . in all . . . matters pending in the courts of San Diego county in which the present district attorney of San Diego county is disqualified." The proceedings before the grand jury terminated in the indictment of the district attorney. Under a recital that "it is necessary, in order to provide funds for the further necessary investigation and procuring evidence for the trial" of the charges against the district attorney, "to make use of a portion of the special fund provided and set apart by the Board of Supervisors" of the county "by sec. 4308 of Political Code for the use of the district attorney in prosecuting such investigations," petitioner then made requisition upon the county auditor "to draw a warrant in my favor upon said fund for such use in the sum of one thousand dollars." The county auditor declined to honor the requisition, whereupon petitioner presented to this court his petition for the writ of mandate requiring that official, respondent in the proceeding, to issue the warrant demanded by the requisition. Upon stipulation the issuance of an alternative writ, or of an order to show cause, was waived, and the petition was set down for hearing as an application for a peremptory writ. All of the questions presented for our consideration arise upon the face of the petition.

The designation of petitioner as special counsel was made pursuant to the terms of section 472 of the Political Code, which provides, in part, "that whenever a district attorney in any county of this state shall, for any reason, become disqualified from conducting any criminal prosecution within such county, the attorney-general may employ special counsel to conduct such prosecution."

The fund to which petitioner referred in his requisition upon respondent is provided for by section 4308 of the Political Code in the following language: "There is hereby created in each county a fund to be known as the district attorney's special fund. It shall be the duty of the board of supervisors, within thirty days after this act takes effect, and annually thereafter, at the beginning of the fiscal year, to transfer from the general fund to the district attorney's special fund, such sum or sums as may be necessary from time to time so that there shall be in such fund at the be-

ginning of each fiscal year available for use by the district attorney, the following amounts: In counties or cities and counties having a population of ninety thousand or more the sum of five thousand dollars ($5,000); in all other counties such sums as the board of supervisors shall set aside, not to exceed two thousand five hundred dollars ($2,500)."

[1] Speaking now in very general terms, it is contended by petitioner that the expression "to conduct such prosecution," found in section 472, imports the right to assemble and employ the resources whereby to conduct a prosecution, and, therefore, the right to resort to the fund contemplated by section 4308. Respondent, however, by an argument later to be examined, insists that in his preparation for the prosecution of the district attorney petitioner may look forward only to the provisions of subdivision 3 of section 4307 of the Political Code to the effect that "expenses necessarily incurred . . . for . . . services in relation to criminal proceedings for which no specific compensation is prescribed by law" are county charges. If respondent is correct in this attitude an alarming prospect is opened to view. Under such circumstances petitioner may fail utterly in the performance of the duty for which the attorney-general has drafted him. The action of the legislature in providing for the fund contemplated by section 4308 presupposes a necessity for money actually in the hands of a district attorney wherewith to prepare for the conduct of criminal litigation. It is also presupposed, necessarily, that the efficiency of a district attorney's office, as an effective agency in the punishment of crime, may be impaired but for the existence of the fund in question. A district attorney is secured against such dangers in the conduct generally of the criminal litigation which it is his duty to prosecute, while petitioner, if the contention of respondent is well-founded, faces an impairment, and therefore a possible failure, of his duty to prosecute the district attorney of San Diego County for the commission of the crime with which he stands charged. It is impossible to contemplate with equanimity the existence of such a state of affairs. Moreover, the arguments whereby respondent seeks to deny to petitioner the right to resort to the special fund provided for in section 4308 have as ready an application to his right to incur expenses which may become a county charge under section 4307. This seems ob-

vious. There can be no possible difference, in legal effect, between a power to spend money of the county himself and a power to incur liabilities which will force the board of supervisors and other county officers to spend it. The contention of respondent, then, if upheld, practically nullifies the appointment of special counsel by the attorney-general under the provisions of section 472. The exercise of the authority conferred by the section becomes empty and barren, and, in consequence, no less than farcical. The special counsel cannot proceed without funds, and the punishment of the district attorney of San Diego County, if he be guilty of crime, becomes, in theory, impossible. It is to be observed here that there is no room under respondent's contention for the view that the attorney-general himself may assemble or command the funds necessary to the prosecution and himself conduct it. The contention, as will hereafter appear, places that officer and the special counsel appointed by him in the same category and under the same disabilities.

Respondent insists that under the constitution the legislature is without authority to empower the attorney-general himself, or a special counsel appointed by him under section 472 of the Political Code, to exercise that control over county funds which was implied by petitioner's requisition on respondent. In truth, it is said that such authority is precluded by sections 4, 5, and 13 of article XI of the organic law. Section 4 provides, in part: "The legislature shall establish a system of county governments, which shall be uniform throughout the state." This is a portion of section 5: "The legislature, by general and uniform laws, shall provide for the election or appointment, in the several counties, of boards of supervisors," of various other officers, including "district attorneys, . . . and shall prescribe their duties and fix their terms of office. . . . It . . . shall provide for the strict accountability of county . . . officers . . . for all public . . . moneys which may be paid to them, or officially come into their possession." A part of section 13 follows: "The legislature shall not delegate to any special commission, private corporation, company, association or individual any power to make, control, appropriate, supervise or in any way interfere with any county . . . money, property or effects, whether held in trust or otherwise, . . . or perform any municipal function whatever."

[2] Counsel for respondent presents various points under these sections of article XI of the constitution. So far as section 4 is concerned, we can see nothing in section 472 of the Political Code that impinges upon the uniformity which is required in county governments. The section of the code, whether it be viewed merely as granting an authority to appoint special counsel or in·addition as also entitling a special counsel to resort to the fund provided for in section 4308 of the same code, applies to every county in the state. It is therefore as uniform in its application as any of the enactments of the legislature relating to county government. [3] Respondent, however, points to several sections of the Political Code which the law-making body has enacted pursuant to the mandate of the constitutional provision, and contends that section 472 interferes or is inconsistent with them. The sections cited are 4000, to the effect that every county ''is a body corporate and politic and as such has the powers specified in this title, and such other powers as are necessarily implied from those expressed''; 4001, designating the agencies by which the powers of counties may be exercised; 4003, enumerating the powers of counties; and 4005, providing that ''contracts, authorizations, allowances, payments, and liabilities to pay, made or attempted to be made in violation of law'' are void and cannot form the basis of a claim against a county. When counsel invokes the provisions of these sections he is entirely beside the mark at which he aims. They are of no greater sanctity than section 472. It is obvious that resort cannot be had to them for the purpose of determining whether section 472 is violative of the constitution. If, however, we meet counsel upon his own ground, we can see no scheme, under the enactments to which he directs our attention, into which the provisions of section 472 do not fit. The latter section is perfectly ·consistent with section 4000, especially as the powers ''specified in this title,'' to employ the language of section 4000, and contained in section 4003, do not include any functions whatever incident to the detection or punishment of crime. We shall take further notice of this important omission in the next succeeding paragraph of this opinion. Section 472 does no violence to section 4001, for according to the latter powers of a county may be exercised ''by agents . . . acting under . . . authority of

law''; but let us observe here that we are far from deciding that petitioner, in anything that he may lawfully do under his appointment by the attorney-general, will exercise any of the powers of the county of San Diego. It is manifest from the provisions of section 4003, which in the interest of brevity we do not set out, that section 472 is not inharmonious with it, this especially because of the fact, to which we have already referred, that section 4003 gives to counties no control over the detection or punishment of crime. Section 472 is not out of step with section 4005, for the reason that the contracts, etc., denounced by the latter section are, naturally, only those which are ''in violation of law.'' The question here is, entirely aside from the provisions of section 4005, whether the powers and authority sought to be exercised by petitioner as special counsel are in violation of law. So much for the sections of the Political Code to which our attention is drawn by respondent.

[4] While we have already observed that the sections of the code to which counsel for respondent refers can furnish no guide toward a solution of the constitutional questions presented to us in this proceeding, it is well thus early to expose a fallacy in the arguments that are submitted in connection with them, particularly for the reason that the same fallacy pervades the entire brief of respondent. We are met with it at every turn. Counsel erroneously supposes and continually takes for granted that a district attorney, in his efforts to bring about the punishment of those who are charged with crime, and that petitioner, in all that he may do to procure a conviction of the district attorney of San Diego County, engage in the exercise of the powers of a county. We have already pointed out that section 4003 gives to a county no such powers. Section 472, if we concede for the moment its validity and constitutionality even to a limited extent, was enacted upon the theory that the power in question resides in the state, for special counsel designated under it are to be appointed by a state officer, the attorney-general. Section 470 of the Political Code, prescribing the duties of the attorney-general, was doubtless framed upon the same theory. Subdivision 5 of the enactment provides that the officer named shall ''exercise supervisory powers over district attorneys in all matters

pertaining to the duties of their offices, and perform any such duties when, in his judgment, such action is advisable, and from time to time require of them reports as to the condition of public business entrusted to their charge." In truth, this language is so broad, when taken alone, as to indicate that a district attorney exercises no county functions whatever, not even in advising county officers, although it is necessary to say no more here than that the enactment is at least broad enough to comport with the idea that the prosecution of criminal charges is a state affair. By subdivision 1 of section 4153 of the Political Code it is provided that a district attorney shall "conduct, on behalf of the people, all prosecutions for public offenses." This language also indicates that the conduct of criminal litigation is a state affair, when it is remembered that section 684 of the Penal Code reads, in part: "A criminal action is prosecuted in the name of the people of the state of California, as a party." When we turn from these statutory provisions and resort to the law of judicial decision, it becomes evident that matters which require governmental attention and which are of general concern to the people of the state must be handled, regulated, and controlled by the state, and not by any agency operating merely within a part or subdivision of the state. This question has frequently arisen over various matters sought to be controlled by charter cities under the "municipal affairs" clause of the constitution. See, for instance, *Pixley* v. *Saunders,* 168 Cal. 152 [141 Pac. 815]; *Gadd* v. *McGuire,* 69 Cal. App. 347 [231 Pac. 754]. There are, specifically, several cases based upon the general principle that the punishment of crime is a matter for the state, and not for a city, within the meaning of the phrase "municipal affairs" as employed in the constitution. See *Farmer* v. *Behmer,* 9 Cal. App. 773 [100 Pac. 901]; *Nicholl* v. *Koster,* 157 Cal. 416 [108 Pac. 302]. We do not mean to say that any of these cases presents the exact question which is now before us, but they all do illustrate the principle that matters which require an exercise of the activities of government and which are of more than local concern are to be dealt with by the state and not by local authorities. Nor do we say that the detection and punishment of crime may not sometimes be a matter of strictly local concern. Thus, the enforcement of penal

ordinances passed by city councils and boards of supervisors may involve action which is for a city or for a county and not, strictly, for the state. It was said in a concurring opinion in *Robert* v. *Police Court,* 148 Cal. 131, 136 [82 Pac. 838, 840] : ''The trial and punishent of offenses defined by the laws of the state is not a municipal affair.'' This opinion was signed by two justices only, it is true, but the quoted statement taken from it gives expression to a principle that is behind each of the other cases which we have cited. And it would seem, logically, that the ''trial and punishment of offenses defined by the laws of the state'' is no more a matter of county concern, or a matter calling for the exercise of the powers of a county, than it is a ''municipal affair.'' Surely, the trial and punishment of crimes, generally, is an activity in which the people of the entire state are interested, and which they may conduct through their own officers. It may be conceded that for some purposes a district attorney is a county officer and as such exercises some of the ''powers'' of a county. When, however, he conducts prosecutions for the punishment of crimes denounced by act of the legislature, he certainly discharges functions which pertain to the state and not to the county, whether or not, technically, he is to be deemed a state officer when he is engaged in the discharge of such functions. Under such circumstances he surely acts as an agent of the state. The reason is therefore apparent why sections 470, 472, 4003, and 4153 of the Political Code and section 684 of the Penal Code are in the form in which we find them. The petitioner in the present proceeding, also, in all that he may do under his appointment as special counsel, will engage in the exercise of state and not of county powers. It has already been remarked that the district attorney of San Diego County is to be tried under indictment by the grand jury. The crime with which he is charged is bribery, an offense denounced by the Penal Code. The status of petitioner as special counsel is therefore plain.

[5] We return to a more specific discussion of the constitutional questions presented on behalf of respondent. It is contended that the legislature has not ''the power to emasculate the office of any of the officers required by the constitution to be appointed or elected under the system of county governments to be established'' by that body. It

is to be observed that this point strikes at the very authority of the attorney-general to appoint special counsel under the terms of section 472 of the Political Code; that is, the point involves the idea that the portion of the section providing for such appointments is unconsitutional, for respondent cites in support of .it a case (*Massenburg* v. *Board of Commrs.*, 96 Ga. 614 [23 S. E. 998]) which decides that the legislature is without power to abolish an office recognized by the constitution. This question runs through the brief of respondent, and the right of petitioner to resort, as special counsel, to the fund contemplated by the provisions of section 4308 of the Political Code is sought to be denied upon the ground that his appointment was void as being in defiance of the constitution. Laying aside the truth, to which we have already referred, that section 472 is of equal dignity with other sections of the Political Code enacted for the purpose of providing a system of county government, it is to be remarked that the section does not "emasculate" the office of district attorney, nor does an appointment made pursuant to its terms. Such an appointment is intended to confer an authority to function only as to matters concerning which a district attorney is disqualified, and in which, in all conscience, he ought not to act. Section 472 merely transmutes this matter of conscience—this affair of pure morals—into legislation. An appointment made under the section results from a laudable attempt of the legislature to prevent the perpetration of great wrongs, and it neither affects the "office" of district attorney nor relieves an incumbent of the office from the discharge of its general duties. The enactment is one of a highly remedial character, and its validity cannot be affected by the specific point now under consideration. We shall say more later, concerning the lengths to which the legislature may go in preventing the horrible solecism involved in the prosecution by a district attorney of a criminal charge against himself and in providing means for an adequate prosecution of the charge by some other person or officer.

[6] It has been observed that section 5 of article XI of the constitution requires that the legislature "shall provide for the strict accountability of county . . . officers . . . for all public . . . moneys which may be paid to them, or officially come into their possession." Pursuant to this man-

date the law-making body has provided for the giving of official bonds by county officers, including district attorneys (Pol. Code, sec. 4022). It is said that petitioner may not make use of the special fund mentioned in section 4308 of the Political Code for the reason that he is not required by section 472 to give bond. But the constitutional provision requires the legislature to "provide for the strict accountability" of "county officers" for public moneys to be handled by them, and petitioner, under his appointment as special counsel, is not a county officer. It is unnecessary to decide whether petitioner is an "officer" at all. The authorities are divided on this question. If, however, he were an officer, it is plain from what we have said above that he is not a "county" officer. We know of no rule requiring the legislature to provide for the giving of bond by one exercising such an office or employment as that provided for by section 472, even if it be conceded that the appointee is to handle county moneys. Such a course might be proper under the dictates of prudence, but it is not required by the constitution. In later paragraphs of this opinion, devoted to a consideration of the effect of the constitution, generally, upon the right of petitioner to have access to the special district attorney's fund, we shall say something more upon the point treated in the present paragraph.

[7] It is provided by section 13 of article XI of the constitution that the legislature "shall not delegate to any special . . . individual any power to . . . control . . . or in any way interfere with any county . . . money, property or effects." If it be conceded for the sake of argument, without deciding, that petitioner is within the strict letter of this inhibition, we are satisfied that he is not within the spirit of it, as measured under the general principles of government which it is the purpose of all constitutions to foster and to protect. We shall now proceed to cover this view by a line of argument which applies as well to inhibitions which respondent sees in each of the sections of the constitution upon which he relies.

Restrictive provisions of constitutions, however positive and drastic, cut very little figure in the settlement of such questions as those here presented. If the constitution of California should be so amended as to contain a provision that the courts of the state should have no further juris-

diction to punish those guilty of crime, or that particular crimes, *malum in se,* should not be the subject of punishment, or that particular persons should not be punished for the commission of crimes *malum in se,* and that no part of the public funds should be employed for the purpose of detecting or punishing any of the crimes coming within any inhibition so declared, those provisions could not stand. They would be null, and the courts not only would disregard them, but would resort to their undoubted inherent powers to prevent the evils attempted to be wrought by them. Not only so, but it doubtless would be the duty of the legislature to pass laws in defiance of them. "Police power is the power inherent in a government to enact laws, within constitutional limits, to promote the order, safety, health, morals, and general welfare of society. As applied to the powers of the states of the American Union, the term is also used to denote those inherent governmental powers which, under the federal system established by the Constitution of the United States, are reserved to the several states" (12 C. J. 904). "No legislature can bargain away the public health or the public morals. The people themselves cannot do it, much less their servants. The supervision of both subjects of governmental power is continuing in its nature, and they are to be dealt with as the special exigencies of the moment may require. Government is organized with a view to their preservation, and cannot divest itself of the power to provide for them" (*Stone* v. *Mississippi,* 101 U. S. 814 [25 L. Ed. 1079]). "[I]t is the settled doctrine of this court that, as government is organized for the purpose, among others, of preserving the public health and the public morals, it cannot divest itself of the power to provide for those objects . . . " (*Powell* v. *Pennsylvania,* 127 U. S. 678 [32 L. Ed. 253, 8 Sup. Ct. Rep. 992, see, also, Rose's U. S. Notes]). The sound and essential principle stated in these cases has been enunciated in many later decisions of the United States courts. From among these we cite only *Butchers' Union Co.* v. *Crescent City,* 111 U. S. 746 [28 L. Ed. 585, 4 Sup. Ct. Rep. 652]; *Mugler* v. *Kansas,* 123 U. S. 623 [31 L. Ed. 205, 8 Sup. Ct. Rep. 273]; *Logan & Bryan* v. *Postal Tel. & Cable Co.,* 157 Fed. 570; *Pennsylvania Hospital* v. *Philadelphia,* 245 U. S. 20 [62 L. Ed. 124, 38 Sup. Ct. Rep. 35]; *Silvey* v. *Commis-*

*sioners,* 273 Fed. 202. The same salutary rule has been announced several times by the courts of this state, although the utterances of our own tribunals have not related expressly to the inability of the people themselves to abdicate the solemn duty incident to the exercise of the police power. "This power cannot be bargained or contracted away, and all rights and property are held subject to it" (*Laurel Hill Cemetery* v. *San Francisco,* 152 Cal. 464 [14 Ann. Cas. 1080, 27 L. R. A. (N. S.) 260, 93 Pac. 70]). In a later case the supreme court quoted thus from *Mugler* v. *Kansas, supra:* "Indeed, as was said in *Stone* v. *Mississippi,* 101 U. S. 814 [25 L. Ed. 1079], the supervision of the public health and the public morals is a governmental power, continuing in its nature, and 'to be dealt with as the special exigencies of the moment may require,' and that 'for this purpose, the largest legislative discretion is allowed, and the discretion cannot be parted with any more than the power itself.' " (*Ex parte Young,* 154 Cal. 317 [22 L. R. A. (N. S.) 330, 97 Pac. 822].) And, again, the court has referred to "the general rule to the effect that the police power 'is a continuous one, reposed somewhere, and one that cannot be barred or suspended by contract or irrepealable law' " (*Ex parte Beck,* 162 Cal. 713 [124 Pac. 548]). One of the district courts of appeal has remarked that "the police power cannot be bartered away even by express contract" (*Maguire* v. *Reardon,* 41 Cal. App. 596 [183 Pac. 303]).

All these cases have an especial application to the duty inherent in government to be active and vigilant in the detection and punishment of crime. If the security of the citizen and the stability of government may be said to depend more upon any one element of governmental power than upon another, that one is the power, nay, the duty, to see to it, if it be humanly possible, that there be a speedy and never failing imposition of the sanctions annexed to the violation of penal laws. To come to the facts of the present case, it would be an execrable thing if a state of the law could be found that would admit of the failure, cessation, or suspension of the duty of the state to encompass the punishment of the crime with which the district attorney of San Diego County stands charged, if he be guilty, or of the slightest impairment of effort to ascertain whether he be guilty or innocent. No restrictive provisions of the con-

stitution, if any there be, can be permitted to stand in the way of the exercise of such a power. Similar situations to that with which we are here confronted have arisen in other states, and they have given rise to a line of decision to which, with profit, we may now refer.

In one case, a district attorney having been disqualified to perform certain duties incident to his office, it appeared that a trial court, acting under statutory provision, had appointed an attorney to act in his stead. Question having been made as to the power of this individual to perform certain of the duties of the district attorney, a higher court said on appeal: "If the contention of defendant's counsel is to prevail, then, if a prosecuting attorney should be for any reason disqualified, all the wheels of criminal justice would be brought to a standstill, for the reason that there would be no vacancy in the office that the governor could fill, and no power in the court to make a temporary appointee who could in all things discharge the duties pertaining to the office in question. The law does not intend any such absurdity, and will not permit such a failure of justice; and, aside from statutory provisions such as those quoted, the power thus to appoint a temporary representative of the state, one armed with full authority to discharge in full the office he temporarily fills, is of necessity an inherent power in courts of justice" (*State* v. *Moxley*, 102 Mo. 374, [14 S. W. 969]). A case presenting a somewhat similar question arose in another jurisdiction. It there appeared that a statute of the state provided for the appointment by "the district court" of special counsel to act in the place of disqualified county attorneys. An appointment of such counsel was made by a judge of the district court while sitting in a county other than that of the county attorney who was alleged to be disqualified. It was contended that the appointment was not within the statute, and in disposing of the question raised the higher court said: "The . . . statute was intended to give the district court the power and authority to appoint temporarily a county attorney to act in the place and stead of the regular county attorney under the circumstances enumerated in the statute. . . . Independent of the statute, however, the court would have the inherent power to appoint a special county attorney under any of the circumstances therein

enumerated. It is essential to the very life of the court that
the proper officers be in attendance upon it. The power to
appoint such officers is necessary for the protection and ex-
istence of the court and absolutely essential to the administra-
tion of justice and the enforcement of all our laws. It would
be an indefensible reproach upon our institutions if crimes
should go unpunished and the public business remained un-
attended to for want of power in a court of general juris-
diction to appoint someone to supply the place of the regu-
lar elected officer when absent from court or disqualified to
act. The courts of this state are not powerless to this ex-
tent. They have the right and power to preserve their
life, and the machinery of the court cannot be kept in
motion without its proper officers. It is therefore an in-
herent power of the presiding judge of the court to supply
these officers when there is a temporary vacancy or a dis-
qualification in any particular case. We conceive it our
duty, therefore, to give the foregoing statute a broad, practi-
cal, and common-sense construction in order to carry into
effect the purposes for which it was enacted, and to give ex-
pression to this inherent power of courts of general juris-
diction in this state. We admit that it was intended that
the special county attorney should be appointed by the
court; but should an irregularity in the appointment destroy
its effect and render void all the acts of this special officer
where it appears conclusively from the record that with the
knowledge and consent of the court the officer proceeded to
his duty? In this case while the original appointment was
made by the judge in vacation, yet when the case was called
for trial, and objection made to that appointment, the judge
in open court before proceeding to the trial of this case
announced that the appointment had been made by him,
and permitted the special county attorney thus appointed
to proceed as the representative of the state in this action.
It is admitted also by counsel for the defendant that the
regular county attorney was disqualified in this case; that
the special county attorney who represented the state was
qualified to act, and the very judge who made the ap-
pointment in vacation presided at the trial. It is our
opinion, therefore, that the action of the trial judge in per-
mitting the special county attorney to act under these cir-
cumstances amounted in itself to an appointment made by

the court, and was a specific ratification by the court of everything that the presiding judge had done in vacation and at his chambers'' (*Hisaw* v. *State,* 13 Okl. Cr. 484 [165 Pac. 636]). Extracts from the opinion in this case were quoted, with evident approval, by the supreme court of the state in *Board* v. *Fain,* 66 Okl. 13 [166 Pac. 896]. Upon the same question see, also, *State* v. *Ellis,* 184 Ind. 307 [112 N. E. 98], where many other cases are cited.

The decisions in the four or five adjudications last cited rest naturally upon the principle enunciated by the cases to which we have above referred and which deal with the duty of government to engage in the uninterrupted exercise of the police power. While the reasoning of them rests, undoubtedly, upon that ground, the occasion for the decisions arose from an equally well-established principle of English and American law, the essentially just principle which early ripened into the maxim that no man shall be a judge in his own case. It is abhorrent to all ideas of natural justice that chancellor or judge shall sit in a cause in which he is interested. The same feeling arises in the mind at the mere suggestion that a prosecutor, or his deputies—for in law the deputies are the arms of their superior and in fact they are usually the servants of his will—may conduct a criminal cause in which the prosecutor is a defendant. The legislature of the various states—our own by section 472 of the Political Code—have taken care that no such anomaly shall exist. The law carefully provides security also against the possibility that another kind of officer may act in matters in which he has an interest. From time immemorial it has been customary to make provision for the appointment of elisors to perform the functions of the shrievalty whenever sheriffs are disqualified to act in the discharge of their duties (3 Bl. Com. 355; 20 C. J. 402; 35 Cyc. 1526; 35 C. J. 277; 15 Cal. Jur. 400; 23 Cal. Jur. 295). While section 226 of our Code of Civil Procedure, relating to elisors, does not in terms provide for their appointment upon the disqualification of sheriffs, the supreme court has determined that such is the meaning of the enactment (*Bruner* v. *Superior Court,* 92 Cal. 239 [28 Pac. 341]; *People* v. *Nakis,* 184 Cal. 105 [193 Pac. 92]), partially because of the language employed by the legislature in section 4192, now section 4173, of the Political Code. Section 726 of the Code

of Civil Procedure provides for the appointment of elisors upon the "disability or disqualification" of commissioners designated to conduct sales of real property under foreclosure. It is not strange that the legislature, by section 472 of the Political Code, has made provision for the appointment of special counsel in case of the disqualification of district attorneys. Indeed, it were strange if no such provision were to be found in our statutory law.

The law is well settled, upon just considerations of public policy, as we have seen, that courts possess the inherent power to name special counsel to act in the place of disqualified public prosecutors. This state of the law is not inconsistent with a power in the legislature, irrespective of constitutional authorization and apparently in defiance of attempted constitutional inhibition, to make it the duty of the attorney-general to appoint such counsel under proper circumstances. Several of the cases to which we have pointed above are to the effect that the inherent power of the courts to appoint exists irrespective or independent of statute. The cases tacitly concede an authority in the legislature, notwithstanding the inherent power in the courts. It would seem, in truth, that it is primarily the duty of the legislative department to provide for the appointment of special counsel to conduct criminal prosecutions against district attorneys who are charged with crime. It cannot be questioned that it is the duty of the legislature to enact laws under which district attorneys shall be elected or appointed, and to make it the general duty of those officers to engage in the prosecution of alleged violators of the Criminal Code. It must follow that it is the duty of the law-making body to provide for an adequate prosecution of those cases in which district attorneys themselves are charged with crime, or in which those regular prosecutors are disqualified for some other reason. Doubtless, if section 472 of the Political Code had no existence, or if the attorney-general had neglected to discharge the duty thrust upon him by it, the superior court in and for the county of San Diego could have appointed petitioner to conduct the prosecution of the indicted district attorney. This power, resting in particular instances in the superior courts of the various counties, perhaps justly to be termed secondary in the face of legislation upon the subject, cannot in-

terfere with the primary duty of the legislature to provide for such appointments throughout the state.

We think the lodging of the power of appointment in the attorney-general shows a proper exercise of legislative discretion. The duties of that officer, as specified in section 470 of the Political Code, are such that he is kept in close touch with the conduct of criminal litigation in the various counties. His finger is on the pulse of the patient and he is the natural physician to prescribe the remedy for such ills of the body politic as are in this proceeding brought to our attention. The functions which petitioner is to discharge under his appointment pertain to the state, and it is proper that the power to appoint him should have been reposed in a state officer. All considerations tend to the view that the legislature exercised not only a proper but a wise discretion in vesting the appointing power where it did.

Nor do we think that the power and duty of the legislature, exercised through section 472 of the Political Code, are affected by the fact that the lawmakers, by section 470 of the same code, have provided that the attorney-general may "when, in his judgment, such action is advisable," perform any of the duties of a district attorney. Section 472 provides, among many things, for the corps of deputies the attorney-general may appoint. The legislature doubtless considered, and justly so, that it would be impossible to determine what number of deputies must be provided to care for the ordinary duties of the office and conduct criminal prosecutions in the several counties of the state, if the latter duty were expected always to be performed from Sacramento. The legislators doubtless also considered that it would be difficult to foresee the extent to which the discharge of the ordinary duties of the office would be impaired, whatever the number of deputies decided upon, by a conduct of criminal cases throughout the state in which district attorneys might be disqualified. It could easily happen that at one and the same period several of the county prosecutors might be disqualified to conduct particular cases because they had been counsel for the defendants before their election, because they were related by blood or affinity to defendants, or because they themselves were charged with crime. There is another prime consideration which the legislature must have considered. A district

attorney is usually a prominent figure in his county. When he is charged with crime a certain degree of sympathy among those who are to act as his judges upon the facts will be enlisted in his behalf by the very fact that the charge has been made. If the attorney-general or his deputies shall appear to conduct the prosecution of the case, the friends, neighbors, and adherents of the defendant will regard the intrusion as a species of carpet-bagging against him, and the prosecution will have burdens to overcome which are entirely divorced from considerations relating to the evidence to be presented to the jury. The legislature has acted wisely in the exercise of a discretion which, under all the circumstances of such a situation, rests with its members alone, in so framing the law that a district attorney may be prosecuted by a citizen of his own community, one who is of influence and good repute among the people of the county, and who may enter into a prosecution of the defendant in some degree freed from the burdens to which we have alluded.

The foregoing considerations have advanced us far toward a conclusion that petitioner, in the discharge of his duty as special counsel, may resort to the fund provided for by section 4308 of the Political Code. Counsel have referred us to no adjudication which touches this specific point and we think no court has decided it, or any question that is closely similar to it. We say we have advanced far toward a determination of the question favorable to appellant's claim, because, if the thought is abhorrent that a district attorney charged with crime may prosecute himself, or that he may go unprosecuted and therefore unpunished if guilty, it is as well shocking to the senses that he may be inefficiently or inadequately prosecuted, because of lack of funds to conduct a proper prosecution, by one appointed to press a charge against him. A lack of funds might well result in a travesty as disgusting to the citizen or as damaging to the public welfare as if the defendant were not prosecuted at all or as if he were sought to be whipped of justice by the feeble taps of a lash wielded by himself. The broad considerations which justify the appointment of petitioner as special counsel cry out that his attempt to encompass a conviction of the alleged malefactor cannot be stifled for the want of the funds neces-

sary to render the attempt successful, if the defendant under charge be in truth guilty. We have already referred to the fact that the legislature has provided for the fund mentioned in section 4308 in order to insure a proper discharge of duty by district attorneys. The enactment of the section amounts to a legislative finding that the labors of the special counsel who is now a petitioner before us may fail if he is denied access to the same fund. We do not take leave of this question here, for there is some authority which bears more or less directly upon it. In one of the cases we have already cited the court said: "[T]he attorney appointed by the court to prosecute in the place of an absent, sick, or disqualified officer has the same power to draw and to sign bills of indictment as the regular official. If this be not true, then it must be confessed that there is a very lame place in our criminal practice" (*State* v. *Moxley, supra*); and it will be remembered that in the portion of the same opinion which we have quoted on an earlier page the court said that such a special prosecutor is "one armed with full authority to discharge in full the office he temporarily fills. . . . " It was remarked in another case: "Such an appointee should be of the court's own selection, and, as to the matters for which he is appointed he becomes vested with all the powers of the district attorney, but independent of that official" (*People* v. *District Court,* 29 Colo. 5 [66 Pac. 896]). In yet another case decided in the same jurisdiction the attorney-general of the state, acting under statutory authority, took up the prosecution of a criminal case in the stead of the local prosecutor. The supreme court said in deciding a question which was presented to it: "When the act prescribing the duties of the attorney-general became effective, the method for prosecuting felonies was by means of an indictment returned by a grand jury. The law, however, required the indictment to be signed by the district attorney and the latter to appear in the courts of his district and prosecute in behalf of the people. Such being the state of the law, it is clear that, when the Legislature empowered the Attorney General to prosecute under certain conditions, that official, when the required conditions existed, could do each and everything the district attorney might have done in the premises. Though

the letter of the law required one official alone to do certain things, its spirit permitted another to do and perform the same or similar acts under certain conditions'' (*People* v. *Gibson,* 53 Colo. 231 [Ann. Cas. 1914B, 138, 125 Pac. 531]). We turn again to the law concerning elisors: ''An elisor appointed to execute process and orders of the court is invested with the powers, duties, and responsibilities of the sheriff in the performance of those duties . . . '' (*Griffith* v. *Montandon,* 4 Idaho, 75 [35 Pac. 704]). A special feature of the law relating to elisors may be mentioned here, in view of the contention of respondent that the constitution would be violated if petitioner were allowed access to the fund provided for in section 4308 of the Political Code, for the reason that under the organic law, as executed by the statute, county officers are required to give bond, no such requirement existing as to special counsel appointed under section 472 of the Political Code. It has been decided in at least one state that an elisor may levy an attachment (*McFarland* v. *Tunnel,* 51 Mo. 334), and section 4173 of our Political Code seems to import that this substitute for sheriff and coroner may levy both attachments and executions. But there is nothing in our statutes which requires the giving of bond by an elisor, and yet in the taking and retention of personal property under either attachment or execution he may demean himself toward it in a manner which, if it were in the case of the sheriff himself, would create a liability upon that officer's official bond. Does such a circumstance nullify the statute providing for the appointment of elisors to levy attachments and executions? If it does, one who institutes suit against both the sheriff and the coroner of a county is denied the right in its courts to secure by attachment the payment of any judgment he may procure, and the right to enforce payment of the judgment by execution, except through the exercise of a power inherent in the courts. Doubtless, an elisor is liable, both civilly and criminally, for a wilful misappropriation of funds or property seized by him under process. The same rule will apply to petitioner here in the matter of his use of the special district attorneys' fund, or any part of it.

We conclude that the petition in this proceeding must be granted because—if for no other reason—it is the irrefragable and inalienable duty of the people to enforce their

penal laws. In the case of the charge pending against the district attorney of San Diego County the performance of that duty has been lodged, by competent authority, in petitioner. There is no way known to the law, as it is presented to us by respondent here, by which he can be impeded in a vigorous and adequate attempt to discharge the duty reposed in him by his appointment.

[8] We think it proper to say a few words upon the question whether this proceeding has become moot, although the point has not been suggested to us. In all things relating to the prosecution of the indicted district attorney we have spoken prospectively, and yet we know that a trial under the indictment has been had since the argument in this proceeding, and that a conviction has resulted, and that the cause is now on appeal to this court. Laying aside the question whether we may take judicial notice of these things actually known to us, and, as well, the question whether a cause is moot can be determined only under the law of judicial notice when no formal showing of the facts is made, we think the proceeding is not moot. The appeal may result in a reversal and the convicted officer may be tried again. The cause against him is still pending, and petitioner may yet require the use of the fund to which he demands access. Nor does the fact that he has secured a conviction without the employment of the fund affect the question here presented. Whether public-spirited citizens have advanced money for the purpose of prosecuting the charge—a thing which sometimes occurs, as we are bound to know—or whether petitioner has been thus far successful in the prosecution despite the handicap caused by an inability to procure funds, is no concern of ours. It is to be observed that no question is here made that petitioner has made requisition upon respondent for an excessive allowance from the special district attorneys' fund, if, indeed, that point could be urged against a discretion apparently exercisable by him alone.

A peremptory writ of mandate will issue as prayed.

CRAIG, J., Concurring.—I concur in the conclusion announced in the foregoing opinion. As to whether or not a restrictive provision contained in a constitution is void and to be disregarded by the courts if it would divest the

government of one of its inherent powers, I express no opinion, for, to my mind, that question is not one whose disposition is necessary to a decision of the instant case.

The status of the special prosecutor appointed by the attorney-general is, I think, that of an assistant to the last-named officer. The mere fact that a special prosecutor appointed under section 472 of the Political Code is not enumerated among those members of the attorney-general's office who are designated as "officers" does not preclude this conclusion, as suggested by counsel for the respondent, under the rule *expressio unius est exclusio alterius,* since the special prosecutor is in certain respects in an entirely different class from those enumerated on account of his temporary tenure and the exceptional occasion for the use of his services. The conduct of the prosecution of the district attorney of San Diego County in this instance constitutes the exercise of a state function, and the discharge of a duty of the state government. It is one which is particularly committed to the attorney-general. (Subd. 5, sec. 407, Pol. Code.) Also, it must be conceded that in this prosecution the petitioner was engaged in the performance of duties and functions and the exercise of powers of a public officer, which in itself strongly indicates that he occupied the same status. (*Coulter* v. *Pool,* 187 Cal. 181 [201 Pac. 120].) That the attorney-general might personally have taken charge of this prosecution, I have no doubt. Had he done so no question could have been raised as to his acting in an official capacity, nor of his having all of the authority of the district attorney of San Diego County in the performance of the duties and the exercise of the powers of that office. While so conducting such prosecution to the exclusion of the incumbent, instead of doing this in person, the attorney-general saw fit to appoint the petitioner as his representative and assistant, and in doing so conferred upon the latter all of the jurisdiction of the office which he represented.

Further, I agree with the preceding opinion in holding that even though it be conceded (which of course it is not) that the special prosecutor is to be so classed as to his status as to be within the letter of section 13, article XI, of the constitution, he is not within the spirit of that

provision, and hence it cannot be used to bar the conclusion reached herein. It is contrary to the spirit of this section to apply it to one performing the official duties of a duly constituted office while so acting under legal authorization of the holder of such office.

THOMPSON, J., Concurring.—I concur in the opinion, except that I must withhold, at this time, assent to the language which declares that courts would disregard restrictive provisions of constitutions which to the courts might seem to be at variance with the purposes of government. Restrictive provisions of state constitutions which in operation should fail to accord to citizens equal protection of the law, or to afford a republican form of government, or should be destructive of the purposes of a republican form of government, would undoubtedly fail by reason of violating section 1 of article XIV or section 4 of article IV of the United States constitution. But the courts of this country derive their authority and their being from constitutions, which are expressions of the will of the people in whom rests, ultimately, the entire power of government. And as water can rise no higher than its source, so the courts cannot be superior to their creator.

The authorities cited in support of this enunciation in the main opinion involve legislative action. The legislature owes its being to the constitution in the same manner as do the courts. Legislative power is restrained by constitutional limitations. As was said in *People* v. *Central Pac. Ry. Co.,* 43 Cal. 398–432, "The deference we owe to the legislative will is only second to that which we owe to the commands of the Constitution, which both the Legislature and the Court are sworn to obey." We also read in 12 C. J. 753, "Courts are never at liberty to question the wisdom or policy of an act of the legislature, their duty being to enforce such acts as are passed to the extent to which they are found to be constitutional and no further." As the power of the court to question the wisdom of legislative enactment is limited to whether it contravenes constitutional guaranties, certainly the power of the court to question the wisdom of constitutional restrictions is bounded by similar limits.