[No. A073553. First Dist., Div. Two. Oct. 17, 1996.]

BIC VAN NGUYEN et al., Petitioners, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
THE PEOPLE ex rel. JAMES FOX, as District Attorney, etc., Real Party
in Interest.

COUNSEL

Steel, Clarence & Buckley, Thomas Steel, Michael Adams and Charles Gretsch for Petitioners.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Christopher J. Wei, Deputy Attorneys General, for Respondent.

## OPINION

**LAMBDEN, J.**—This court issued an alternative writ of mandate pursuant to Code of Civil Procedure[1] section 400 to review the trial court's denial of Bic Van Nguyen et al.'s (Petitioners) motion to transfer the action to another county pursuant to section 394, subdivision (a), and section 397, subdivision (b). We find the District Attorney of San Mateo County represents the People of the State of California in a red light abatement action (Pen. Code, § 11226), exempting this action from the mandatory transfer provision of section 394, subdivision (a). We also find Petitioners did not establish they would suffer prejudice if a San Mateo County judge tried the case, so

---

[1]Unless otherwise designated, all code sections refer to Code of Civil Procedure.

refusing to transfer venue pursuant to section 397, subdivision (b), did not constitute an abuse of discretion. Accordingly, we deny the petition for writ of mandate.

## BACKGROUND

The San Mateo County District Attorney in the name of the People of the State of California (People) filed a complaint on January 12, 1996, under the Red Light Abatement Law (Pen. Code, § 11226) to abate acts of lewdness and prostitution at the San Mateo businesses of Bay Relaxation and Tanning, Kahala Relaxation and Tanning, and Asian Gardens. Petitioners, all of whom reside outside of San Mateo County, own the businesses. The complaint requested the trial court to enjoin the illegal activities occurring at the businesses, order the sale of the fixtures and movable property on the premises, and order the closure of each building for one year. At the People's request, the trial court issued a temporary restraining order.

Petitioners moved to transfer the action to another county pursuant to section 394, subdivision (a) (mandatory transfer when nonresident defendants are sued by a local public entity), and section 397, subdivision (b) (court has discretion to transfer venue when it finds defendants cannot receive an impartial trial in that county). At the hearing on February 29, 1996, the trial court denied the motion to transfer.

A petition for a writ of mandate with a request to stay the hearing on the preliminary injunction was filed on March 18, 1996. This court temporarily stayed the proceedings and issued an alternative writ of mandate on April 30, 1996, ordering the trial court to vacate its denial of the motion to change venue or, in the alternative, show cause before this court why a preemptory writ of mandate should not issue. The trial court did not vacate its order and the Attorney General submitted opposition.

## DISCUSSION

Petitioners contend the trial court erred when it denied their motion to transfer[2] pursuant to section 394, subdivision (a), because the district attorney acting pursuant to the Red Light Abatement Law (Pen. Code, § 11226) represented the county. Section 394, subdivision (a), requires the court to transfer an action when a party makes such a request and plaintiff(s)

---

[2]Since Petitioners have no right to a jury trial, the court may, in lieu of transferring the action, "request the chairman of the Judicial Council to assign a disinterested judge from a neutral county to hear said cause and all proceedings in connection therewith." (§ 394, subd. (a).)

is a county, city, or local agency and defendant(s) resides in another county.[3] No party disputes the fact all defendants in this action live outside of San Mateo County.[4] The People assert section 394, subdivision (a), does not apply because the district attorney acted on behalf of the state, and subdivision (c), excludes state actions from the section's mandatory transfer provision.[5]

Neither the parties' nor our independent research uncovered any case characterizing the district attorney's role in a red light abatement action. Consequently, we examine the legislative intent to determine whether section 394, subdivision (a), governs actions by the district attorney pursuant to the Red Light Abatement Law. After determining the applicability of the mandatory transfer provision, we discuss Petitioners' claim the court abused its discretion in refusing to transfer venue pursuant to section 397, subdivision (b), on the basis of inherent prejudice.

I. *Transfers Pursuant to Section 394, Subdivision (a)*

A. *The District Attorney Represents the State in Red Light Abatement Lawsuits*

The Legislature determines where venue lies, so we must decide whether the Legislature intended red light abatement actions (Pen. Code, § 11226) to

---

[3]Section 394, subdivision (a) states, in part: "An action or proceeding against a county, or city and county, a city, or local agency, may be tried in such county, or city and county, or the county in which such city or local agency is situated, unless the action or proceeding is brought by a county, or city and county, a city, or local agency, in which case it may be tried in any county, or city and county, not a party thereto and in which the city or local agency is not situated. Except for actions initiated by the district attorney pursuant to Section 11350, 11350.1, 11475.1, or 11476.1 of the Welfare and Institutions Code, any action or proceeding brought by a county, city and county, city, or local agency within a certain county, or city and county, against a resident of another county, city and county, or city, or a corporation doing business in the latter, shall be, on motion of either party, transferred for trial to a county, or city and county, other than the plaintiff, if the plaintiff is a county, or city and county, and other than that in which the plaintiff is situated, if the plaintiff is a city, or a local agency, and other than that in which the defendant resides, or is doing business, or is situated. . . . When the action or proceeding is one in which a jury is not of right, or in case a jury be waived, then in lieu of transferring the cause the court in the original county may request the chairman of the Judicial Council to assign a disinterested judge from a neutral county to hear said cause and all proceedings in connection therewith. . . . This section shall apply to actions or proceedings now pending or hereafter brought."

[4]Bic Van Nguyen lives in Fairfield, California; Julie Burgess resides in Milpitas, California; and Michael D'Agostino and Ty Thi D'Agostino live in Florida.

[5]Section 394, subdivision (c), states: "For the purposes of this section, 'local agency' shall mean any governmental district, board, or agency, or any other local governmental body or corporation, but shall not include the State of California or any of its agencies, departments, commissions, or boards."

serve state or county interests. (See *People* v. *Spring Valley Co.* (1952) 109 Cal.App.2d 656, 669-670 [241 P.2d 1069].) District attorneys may act as either county or state officers. (Gov. Code, §§ 26500-26502, 26521; *Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 653, 657 [83 Cal.Rptr. 41].) The plain language of Penal Code section 11226 authorizes the district attorney to bring the action "in the name of the people of the State of California" and the state has the power to abate nuisances under its police power. (*People* ex rel. *Hicks* v. *Sarong Gals* (1974) 42 Cal.App.3d 556, 563 [117 Cal.Rptr. 24].)

Petitioners, however, contend the district attorney acted on behalf of the county because an abatement lawsuit is civil, not criminal, and all the declarations submitted in support of the preliminary injunction came from city and county employees, not state employees. Furthermore, the language of the statute limits the bringing of an abatement action to "any citizen of the state resident within the county" (rather than any citizen of the state) and the district attorney (instead of including the Attorney General). (Pen. Code, § 11226.)

■ " '[W]here the language of a statute is reasonably susceptible of two constructions, one of which in application will render it reasonable, fair and harmonious with its manifest purpose, and another which would be productive of absurd consequences, the former construction will be adopted.' [Citation.]" (*City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256-257 [330 P.2d 888].) ■ Thus, we must determine which definition of the district attorney's role more aptly fulfills the objective of the Red Light Abatement Law.

■ District attorneys act on behalf of the state when prosecuting crimes. (*Pitchess* v. *Superior Court, supra,* 2 Cal.App.3d 653, 657.) Although abating a nuisance constitutes a civil action, the California Supreme Court has repeatedly likened red light abatement actions to criminal prosecutions. (*Board of Supervisors* v. *Simpson* (1951) 36 Cal.2d 671, 674 [227 P.2d 14] ["While actions to abate nuisances are considered civil in nature [citation] the abatement of houses of prostitution is in aid of an auxiliary to the enforcement of the criminal law."]; *People* ex rel. *Clancy* v. *Superior Court* (1985) 39 Cal.3d 740, 749 [218 Cal.Rptr. 24, 705 P.2d 347] (*Clancy*) ["Public nuisance abatement actions share the public interest aspect of eminent domain and criminal cases, and often coincide with criminal prosecutions."].) " 'A public or common nuisance . . . is a species of catch-all criminal offense, consisting of an interference with the rights of the community at large. . . . As in the case of other crimes, the normal remedy is in the hands of the state.' " (*Clancy, supra,* 39 Cal.3d at p. 749, quoting Prosser & Keeton, The Law of Torts (5th ed. 1984) § 86, p. 618.) The " 'general object

of the legislation involved in the said act (Red Light Abatement Act) is, it is obvious, no different from that of certain penal statutes . . . .' " (*Board of Supervisors* v. *Simpson, supra,* 36 Cal.2d 671, 675.)

■ The Red Light Abatement Law furthers the policy of the state's criminal statutes as established by Penal Code sections 315 (misdemeanor for keeping or living in a house of prostitution) and 316 (misdemeanor for keeping disorderly or assignation house). Moreover, any person maintaining a public nuisance is guilty of a misdemeanor. (Pen. Code, § 372; *Board of Supervisors* v. *Simpson, supra,* 36 Cal.2d 671, 675.) The Legislature passed this civil statute to provide a *summary method* to shut down places " 'where acts of lewdness and prostitution are habitually practiced and carried on as a business. The act [Red Light Abatement Act], represents only the concrete application of the state's power of police, and, preferably to the courts of criminal jurisdiction, invokes the aid of the civil courts as the most certain instrumentality for the suppression of an evil which has been by the legislature deemed of so pernicious a nature, in its effect upon society, as to have actuated that body in denouncing its practice as a public crime.' [Citation.]" (*Board of Supervisors* v. *Simpson, supra,* 36 Cal.2d at p. 675.)

An abatement action, as the People argue, resembles an antitrust action in that both are civil actions "akin to a criminal enforcement action" and "brought in the public interest." (*People of the State of Cal.* v. *Steelcase Inc.* (C.D.Cal. 1992) 792 F.Supp. 84, 86.) In *Steelcase* the Los Angeles County District Attorney on behalf of the People brought an action pursuant to the unfair business practices act. The defendant company removed the case to federal court on the basis of diversity of citizenship and alleged the real party in interest was not the state, but the county. The federal court found no diversity jurisdiction and ruled the district attorney acted on behalf of the state.[6]

■ A red light abatement action "is prosecuted in the name of the People of the state, as are criminal prosecutions, which indicates that the county as such is not as much concerned as the People of the state." (*Board of Supervisors* v. *Simpson, supra,* 36 Cal.2d 671, 674.) Like a criminal prosecution, the evidence and investigation may be local in character. Thus, it makes no difference that San Mateo County and city employees made the declarations submitted in support of the preliminary injunction. Nor does it

---

[6]Petitioners contend this case is not relevant because the statute authorized both the district attorney and the Attorney General to bring unfair competition lawsuits. More importantly, as the People assert, both the antitrust and Red Light Abatement law authorize the district attorney to act on behalf of the People of the State of California because both actions resemble criminal prosecutions.

matter that Penal Code section 11226 does not authorize citizens outside of the county where the nuisance is located to bring a lawsuit, since this factor has no direct bearing on the district attorney's role and function. Not authorizing the Attorney General to bring such an action does relate to a determination of the Legislature's intent, but standing alone, is not dispositive. More significant factors are the relationship between red light abatement actions and criminal prosecutions, the state's interest in abating nuisances, and the statute's language specifying the district attorney acts on behalf of the People.

Our construction of the role of the district attorney must harmonize with the purpose of section 394. For the reasons set forth below, we find this definition of the district attorney's role does not contravene the purpose of section 394.

### B. Finding the District Attorney Represents the State in Red Light Abatement Actions Comports With the Purpose of Section 394

█ Petitioners correctly assert the purpose of section 394 is to guard against possible local prejudice against out-of-county defendants and, since it is remedial legislation, we must construe the statute liberally. (*San Francisco Foundation* v. *Superior Court* (1984) 37 Cal.3d 285, 296 [208 Cal.Rptr. 31, 690 P.2d 1].) █ Section 394, subdivision (a), applies especially to this type of case, Petitioners contend, because they would suffer prejudice if the case were tried in San Mateo County. The evidence supporting their claim of prejudice consisted of the county's and city's spending more than $5,000 on "scores" of law enforcement officers and "confidential informants," two newspaper articles covering the raid on the businesses, and canvassing allegedly done by employees of the San Mateo Police Department asking people if they would sign petitions to close down the businesses. As explained below, these factors have minimal relevance to the protective purpose of section 394.

The protective purpose of section 394 relates to the prejudice an "outsider" might suffer because San Mateo taxpayers may fear their monetary interests are linked to the city, county, or city agency. In *Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259, 267 [131 Cal.Rptr. 231, 551 P.2d 847], the Supreme Court ruled jurors in Alameda County would have "more than an academic interest" in a damage suit involving Bay Area Rapid Transit (BART) and "totaling more than $100 million" because BART had the authority to levy property taxes in Alameda County and citizens of Alameda County partially funded BART by paying a sales tax. The corporation's contract with BART represented its sole business in

Alameda County; thus, Alameda County jurors would not see the company as closely linked to Alameda's economic viability. Accordingly, section 394, subdivision (a), does not require a transfer when a corporation does business in the county because the jurors could see their economic interests as aligned with the economic well-being of the company. (See *Finance & Construction Co.* v. *Sacramento* (1928) 204 Cal. 491, 494 [269 P. 167].)

In contrast, this lawsuit does not impact the economic vitality of San Mateo County. Petitioners seem to claim the $5,000 spent investigating the businesses could create prejudice. Money spent prior to trial has no relevance to the reasoning underlying section 394. Instead, section 394 is designed to protect a party from the prejudice resulting from citizens in the county perceiving the *trial outcome* as tied to their economic interests. If Petitioners won the lawsuit, the taxpayers of San Mateo would not stand to lose any money. Thus, the judgment in this case would not translate into any monetary loss for a citizen of San Mateo County. Indeed, we could find no case granting a section 394 transfer when the judgment had no potential impact on the fiscal fortunes of the citizens of a county. (See, e.g., *Ohio Casualty Ins. Group* v. *Superior Court* (1994) 30 Cal.App.4th 444 [35 Cal.Rptr.2d 771] [construction company sued school district for breach of contract and fraud]; *Garrett* v. *Superior Court* (1974) 11 Cal.3d 245 [113 Cal.Rptr. 152, 520 P.2d 968] [taxpayer has interest in keeping award unreasonably low in condemnation lawsuit]; *Finance & Construction Co.* v. *Sacramento, supra,* 204 Cal. 491 [lawsuit for damages against City of Sacramento for unlawful diversion of water onto lands].)

Petitioners also contend the clear language of section 394, subdivision (a), does not exclude red light abatement actions, thereby revealing the Legislature had no intent to omit them. The statute specifies section 394 covers all actions brought by city and county plaintiffs except for actions initiated by the district attorney pursuant to sections 11350, 11350.1, 11475.1, or 11476.1 of the Welfare and Institutions Code. These specific exceptions, however, all refer to actions by the district attorney on behalf of the county. As discussed above, we find the district attorney files red light abatement actions on behalf of the state, and subdivision (c), does specifically exclude state actions from the mandatory transfer provision.[7]

Exempting red light abatement actions from the mandatory transfer provisions of section 394, subdivision (a), does not contravene the policy

[7]Similarly, Petitioners' reliance on *County of Los Angeles* v. *Craig* (1942) 52 Cal.App.2d 450 [126 P.2d 448] (district attorney brought action on behalf of the county pursuant to Welf. & Inst. Code, former § 2224 to recover money) and *Scribner* v. *Superior Court* (1971) 19 Cal.App.3d 764 [97 Cal.Rptr. 217] (district attorney brought paternity action pursuant to Welf. & Inst. Code, § 11479) is similarly flawed. In these cases the court did transfer the cases pursuant to section 394, subdivision (a), but both cases involved the district attorney

underlying section 394. Such a result does not leave a defendant without a remedy, since the court may still transfer the action upon a showing of prejudice under section 397, subdivision (b).

## II. *Transfers Pursuant to Section 397, Subdivision (b)*

■ Petitioners argue the court abused its discretion when it denied their motion for transfer of venue pursuant to section 397, subdivision (b). This statute states the court may change the place of trial on a party's motion "[w]hen there is reason to believe that an impartial trial cannot be had therein." Not only is the standard of review abuse of discretion, but Petitioners must show actual prejudice. (*Union Trust Life Ins. Co.* v. *Superior Court* (1968) 259 Cal.App.2d 23 [66 Cal.Rptr. 270].)

The evidence submitted by Petitioners falls far short of proving actual prejudice. Petitioners claim prejudice because two newspaper articles reported the raid on the businesses, the city and county spent just over $5,000 investigating the businesses, and a declaration by an employee for Petitioners' counsel stated people told him the police department asked them if they supported shutting down the businesses. As the People contend, Petitioners' limited showing does not demonstrate a widespread feeling of prejudice extending over a long time. (See *People* v. *Ocean Shore Railroad, Inc.* (1938) 24 Cal.App.2d 420 [75 P.2d 560] [no abuse of discretion in transferring venue when defendants filed nearly 200 affidavits which referred to the widespread feeling of prejudice extending over a long period of years against the defendants].)

Even more significantly, Petitioners' argument avoids any explanation of the prejudice occurring in a trial by the court rather than a jury. (*People* ex rel. *Sorenson* v. *Randolph* (1979) 99 Cal.App.3d 183 [160 Cal.Rptr. 69]; *People* v. *McCaddon* (1920) 48 Cal.App. 790, 792 [192 P. 325] [no right to jury trial in abatement actions].) "[T]he prospect of jury trial is extremely important, if not crucial, in determining whether 'there is reason to believe that an impartial trial cannot be had' in the court where the matter is pending." (*San Francisco Foundation* v. *Superior Court, supra,* 37 Cal.3d 285, 299.) Petitioners have offered no evidence to establish they cannot receive a fair *court* trial.

There appearing no evidence establishing prejudice, we find the court did not abuse its discretion when the court stated: "I don't think there is any reason to believe that an impartial trial cannot be had in San Mateo County."

acting on behalf of the county. These cases are not germane to the issue before us: namely, whether section 394 applies when the district attorney represents the People.

## CONCLUSION

When district attorneys file a complaint pursuant to the Red Light Abatement Law, they act on behalf of the People of the State of California. Therefore, such actions are not subject to the mandatory transfer provision of section 394, subdivision (a). Petitioners cannot avail themselves of the transfer provision under section 397, subdivision (b), because the trial court did not abuse its discretion when it found there was no evidence to suggest an impartial trial could not be held in San Mateo County. Accordingly, the alternative writ is discharged and we deny the petition for writ of mandate.

Kline, P. J., and Haerle, J., concurred.