Filed 2/6/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THE NORTH RIVER INSURANCE<br>COMPANY,<br><br>    Defendant and Appellant;<br><br>BAD BOYS BAIL BONDS,<br><br>    Real Party in Interest and Appellant. | F075035<br><br>(Stanislaus Super. Ct. No. 2064175)<br><br><br>**ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT]** |

**THE COURT:**

It is ordered that the opinion filed herein on December 19, 2018, be modified as follows:

1.     The first sentence of the first paragraph on page 3 is modified as follows:

On August 10, 2016, the district attorney filed an application in Stanislaus Superior Court for requisition of defendant from the State of Washington.

2.     Part III., on pages 6 through 10, is replaced in its entirety with the following:

**III.     County's Standing to Claim Reimbursement**

Appellants claim that the State of California, not County, is the obligee under the terms of the bail bond, and as such, County is not entitled to recover costs and expenses relating to extradition.  The terms of the bail bond explain that if defendant does not appear or meet the other applicable conditions, then appellants "will pay to the *People of the State of California* the sum of [$75,000] .…"  (Italics added.)  Additionally, section 1306, subdivision (b), which governs compensation to the government for the costs of extradition, states, "[i]f a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief to compensate *the people* for the costs of returning a defendant to custody pursuant to Section 1305 .…"  (Italics added.)  Based on the language of the bail bond and the statute, appellants contend that only the State of California, not County, has standing to request compensation for the costs of extradition.  In addition, for the first time in a petition for rehearing, appellants contend that County does not have standing to sue in civil proceedings without express statutory authorization, and bail forfeiture proceedings are civil in nature.

Section 1306, subdivision (e)(2), not cited by either party, provides that the district attorney or county counsel shall demand payment of its judgment for costs within a specified time period and, if such judgment is not so paid, the district attorney or county counsel shall "forthwith enforce the judgment in the manner provided for enforcement of money judgments generally."  Given that proceedings to recover on money judgments are generally civil in nature, as are bail forfeiture proceedings, section 1306, subdivision (e)(2), confers standing on County to enforce a judgment for extradition costs and provides the statutory authorization to appear in civil proceedings that appellants claim is absent.

We turn to appellants' contention that the reference to "the people" in section 1306, subdivision (b), together with language in the bond that appellants will compensate "the [p]eople" for extradition costs, must be construed to mean that only the State of California has standing to seek reimbursement.  In addition to being inconsistent with section 1306, subdivision (e)(2), we find no merit in appellants' argument as a matter of statutory interpretation.  "[T]he language used in a statute or constitutional provision should be given its ordinary meaning, and '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).'" (*People v. Valencia* (2017) 3 Cal.5th 347, 357 (*Valencia*), quoting *Lungren*

*v. Deukmejian* (1988) 45 Cal.3d 727, 735.) To that end, we generally must "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose," and have warned that "[a] construction making some words surplusage is to be avoided." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 (*Dyna-Med*).)

"'[T]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' [Citation.] 'Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.'" (*Valencia*, *supra*, 3 Cal.5th at pp. 357–358, quoting *Dyna-Med*, *supra*, 43 Cal.3d at p. 1387.)

Section 1306, subdivision (b), states, "the people" are to be compensated for the costs of returning a defendant to custody. It is ordinarily known that criminal actions are prosecuted in the name of the People of the State of California even when the action is prosecuted by a local agency or municipality. Section 684 states, "A criminal action is prosecuted in the name of the people of the state of California, as a party, against the person charged with the offense."

For well over 100 years, county district attorneys have acted as agents of the State of California to prosecute criminal cases. "'The district attorney in the discharge of the duties of his office performs two quite distinct functions. He is at once the law officer of the county and the public prosecutor. While in the former capacity he represents the county and is largely subordinate to, and under the control of, the board of supervisors, he is not so in the latter. *In the prosecution of criminal cases he acts by the authority and in the name of the people of the state.*'" (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 359, quoting *County of Modoc v. Spencer* (1894) 103 Cal. 498, 501, italics added.) "District attorneys act on behalf of the state when prosecuting crimes." (*Nguyen v. Superior Court* (1996) 49 Cal.App.4th 1781, 1787.)

"It may be conceded that for some purposes a district attorney is a county officer .… When, however, he conducts prosecutions for the punishment of crimes denounced by act of the legislature, he certainly discharges functions which pertain to the state and not to the county, whether or not, technically, he is to be deemed a state officer when he is engaged in the discharge of such functions. *Under such circumstances he surely acts as an agent of the state.*" (*Sloane v. Hammond* (1927) 81 Cal.App. 590, 599, italics added; see *Shepherd v. Superior Court* (1976) 17

Cal.3d 107, 122 [the district attorney "is a public officer, under the direct supervision of the Attorney General [citation], who 'represents the sovereign power of the people of the state, by whose authority and in whose name all prosecutions must be conducted'"].)

As a county district attorney is the public official that acts as an agent of the People of the State of California when prosecuting criminal cases, it likewise follows that it would be the entity that suffers the economic losses that occur during prosecution. The use of the term "the people" in section 1306, subdivision (b), when read in light of the understood meaning of the term in the context of criminal prosecutions in California would not reasonably be read to limit compensation to the state, when counties, in their capacity as agents of the state, conduct the criminal prosecution. Consistent with section 1306, subdivision (e)(2), we hold that section 1306, subdivision (b), entitles counties, as agents of the State of California, to seek compensation for the costs of returning a defendant to custody.

When viewing section 1306 as a whole, the Legislature specifically authorized the county, not the state, to seek reimbursement for the costs associated with returning a defendant to custody. Section 1306, subdivision (b), states "the people" should be compensated, but subdivision (e)(2) provides that the district attorney or county counsel shall demand payment for the costs and shall enforce a judgment against the surety or bondsman "in the manner provided for enforcement of money judgments generally." In this case, the district attorney sought reimbursement of costs in the underlying criminal proceeding. However, to the extent County had to use civil enforcement remedies or initiate a civil proceeding to collect the costs owed, it would have standing to do so based on section 1306, subdivision (e). Although appellants contend that the State of California is the proper entity to recover costs, they do not mention nor present argument why the state should be entitled to seek recovery when it is not authorized to do so under section 1306, subdivision (e)(2).

Appellants also rely upon sections 1557 and 1558 for the proposition that County cannot be compensated for expenses of extradition from the exoneration of the bond. Section 1557 discusses compensation to cities and counties directly from the State of California for extradition expenses. The section places limits on the amount of compensation allowed from the State of California, including, for example, the amounts that can be spent on meals. (See § 1557, subd. (d)(1)–(3).) However, section 1557 is not applicable to the present situation. County did not request compensation

4.

from the state.  Instead, the compensation was requested directly from the surety.

Appellants also argue that section 1558 limits the amount of recovery not just under section 1557, but also under section 1306, subsection (b).  Section 1558 states, "No compensation, fee, profit, or reward of any kind can be paid to or received by a public officer of this state … for a service rendered in procuring from the Governor the demand mentioned in Section 1557, or the surrender of the fugitive, or for conveying him or her to this state, or detaining him or her therein, *except as provided for in that section.…*"  (Italics added.)  Section 1558 clearly limits the compensation that can be recovered from the State of California for extradition to the costs and expenses expressly described in section 1557.  By specifically and exclusively referencing section 1557, section 1558 should be interpreted based on its ordinary meaning to only apply to costs awarded under section 1557 from the state.  While sections 1557 and 1558 limit compensation when sought from the state, no California court has interpreted the sections to limit the type or amount of recovery sought from a private entity acting as the surety of a bail bond.

Moreover, we note that appellants' argument is conceptually inconsistent.  While appellants challenge County's costs associated with the wages of the officers, appellants concede that County should recoup its out-of-pocket costs related to travel expenses.  If, as appellants contend, County was not the agency entitled to compensation under section 1306, subdivision (b), then County should not be entitled to any costs.  Appellants provide no explanation as to why it would pay some, but not all, of County's costs if County was not legally entitled to any compensation.

There is no change in the judgment.  As modified, appellants' petition for rehearing is denied.

_____
MEEHAN, J.

WE CONCUR:


_____
PEÑA, Acting P.J.



_____
DESANTOS, J.

5.

Filed 12/19/18; Certified for Publication 1/16/19 (order attached) (unmodified version)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>                  v.<br><br>THE NORTH RIVER INSURANCE COMPANY,<br><br>      Defendant and Appellant;<br><br>BAD BOYS BAIL BONDS,<br><br>      Real Party in Interest and Appellant. | F075035<br><br>(Super. Ct. No. 2064175)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Scott T. Steffen, Judge.

Jefferson T. Stamp for Defendant and Appellant and Real Party in Interest and Appellant.

John P. Doering, County Counsel, and Robert J. Taro, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Surety The North River Insurance Company (North River) and its bail agent, real party in interest Bad Boys Bail Bonds (Bad Boys) (collectively appellants), appeal from the trial court's conditional bond exoneration order of November 16, 2016. After fleeing the state, the criminal defendant was found and extradited from the State of Washington to Stanislaus County (County), and the court ordered appellants' $75,000 bail bond exonerated under Penal Code section 1305, subdivision (c)(1).[1] Upon request of County, the court conditioned the exoneration of the bond on the payment of expenses in the amount of $5,323.61 for the costs of extradition.

Appellants challenge a portion of the costs awarded, specifically $3,161.79 awarded to County to recoup the wages and benefits owed to the two law enforcement officers who transported defendant. Appellants contend the payment of those expenses was unauthorized under section 1306, subdivision (b), because the statute only authorizes payment of expenses to the People of the State of California, not to County, and, further, the wages and benefits of the officers were not the type of expenses authorized under the statute. Upon review, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

The Stanislaus County District Attorney charged defendant Amanda Sanchez with two criminal counts, a felony and a misdemeanor. The trial court set bail at $75,000. In June 2016, Bad Boys, as the agent for North River, posted a $75,000 bond for defendant's release. The terms of the bond provided that, if defendant failed to appear in court, judgment may be entered summarily against North River as provided by sections 1305 and 1306. Defendant failed to appear at a hearing on June 8, 2016. The trial court declared the bond forfeited and issued a bench warrant for defendant.

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

On August 10, 2016, the district attorney filed an application for requisition of defendant from the State of Washington, which the court signed on August 3, 2016. On November 10, 2016, two law enforcement officers traveled to Washington and transported defendant back to Stanislaus County. Four days later, County filed an application, along with supporting declarations, for costs under section 1306, subdivision (b), for extraditing defendant. The application included itemized claim forms detailing expenses incurred to extradite defendant. Of the total of $5,323.61 in expenses, $2,161.82 was for travel expenses, including, but not limited to, airfare, rental car, lodging and food, and $3,161.79 was for hourly wages and benefits for the time the officers spent traveling to extradite defendant.

The court held a hearing on the exoneration of the bond. At the hearing, appellants requested a continuance to address the costs requested by County. The court denied the request, based on its understanding that it was required to immediately exonerate the bond and award the costs. However, the court informed appellants that they would have 30 days to file a motion for relief from payment of the costs, should they choose to do so. Accordingly, the court exonerated the bond, awarded County the total amount of costs requested, and entered judgment. Appellants did not move for relief from the judgment. Rather, they paid the costs under protest and filed the instant appeal.[2]

## DISCUSSION

Appellants present two challenges to the costs awarded to County. First, they question whether County, as opposed to the State of California, has standing to seek reimbursement for extradition expenses under section 1306, subdivision (b), and, second,

---

[2] Appellants provided payment directly to the Stanislaus County Sherriff's Department, the law enforcement agency responsible for defendant's extradition.

3.

whether those expenses reasonably would include the wages and benefits of the officers who conducted the extradition.[3]

## I.     Law Applicable to Bail[4]

"[E]xcept for capital crimes when the facts are evident or the presumption great," a criminal defendant has a right to be "released on bail by sufficient sureties …." (Cal. Const., art. I, § 28, subd. (f)(3).)  The most common mechanism for obtaining release is a bail bond, which rests upon two different contracts between three different parties:  The surety contracts with the government to """"act[] as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond,""" and the defendant contracts with the surety to pay a premium for the bond and to provide collateral in the event of his or her nonappearance.  (*People v. Financial Casualty & Surety, Inc.* (2016) 2 Cal.5th 35, 42 (*Financial Casualty*), quoting *People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 657 (*American Contractors*).)

If the defendant does not appear as ordered "without sufficient excuse," the trial court can declare the bond forfeited in open court (§ 1305, subd. (a)(1)) or, if the court "has reason to believe that sufficient excuse may exist for the failure to appear," continue the case for a "reasonable" period of time "to enable the defendant to appear" (§ 1305.1). Forfeiture is the general rule.  (*Financial Casualty*, *supra*, 2 Cal.5th at p. 42 ["When the

---

**3**     On appeal, County contends that appellants waived their right to appeal by failing to object to the award of costs.  However, that is not entirely accurate.  At the hearing, appellants requested a continuance to challenge the requested costs, but the court denied the request. Accordingly, it is not clear whether appellants were provided the opportunity to properly object to the costs awarded.  We need not address this issue, because, as shown *post*, even if appellants had not waived their right to appeal for failure to object, we find that their arguments are without merit.  In any event, we agree that appellants may raise issues of standing and jurisdiction without having objected in the trial court and, as mentioned, we address the merits of appellants' contentions *post*.  (*Drake v. Pinkham* (2013) 217 Cal.App.4th 400, 407.)

**4**     On August 28, 2018, the Governor approved Senate Bill No. 10.  Senate Bill No. 10 reforms California's existing system of cash bail.  However, it does not go into effect until October 1, 2019.  (Sen. Bill No. 10, approved by Governor, Aug. 28, 2018 (2018 Reg. Sess.) ch. 244, § 3.)  Accordingly, Senate Bill No. 10 does not impact the outcome of this appeal.

surety breaches [its] contract [with the government] by failing to secure the defendant's appearance, the bond generally must be enforced."].)

Once the bond is forfeited, the surety has 185 days to move to vacate the forfeiture. (§ 1305, subds. (b)(1), (c).) This is often called the "appearance period." (*American Contractors*, *supra*, 33 Cal.4th at p. 658.) The surety may ask for an additional 180-day extension of this period. (§ 1305.4.) Extensions may only be granted for "good cause" (*ibid.*), which turns on the surety's diligence in tracking down the defendant as well as whether there is "a reasonable likelihood [that] the extension will result in the defendant's apprehension" (*Financial Casualty*, *supra*, 2 Cal.5th at p. 47).

The surety is entitled to have the trial court vacate the bond's forfeiture and exonerate the bond "[i]f the defendant appears either voluntarily or in custody after surrender or arrest in court within 180 days of the date of forfeiture …." (§ 1305, subd. (c)(1).) "[T]he court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated." (*Ibid.*) If the court vacates the forfeiture and exonerates the bond on this or any other statutorily permissible ground, it "shall impose a monetary payment as a condition of relief to compensate the people for the costs of returning a defendant to custody" unless such an award would not be in "the best interest of justice …." (§ 1306, subd. (b).) "The amount imposed shall reflect the actual costs of returning the defendant to custody." (*Ibid.*)

Bail bond proceedings, despite growing out of criminal prosecutions, "are independent from and collateral to the prosecutions and are civil in nature." (*American Contractors*, *supra*, 33 Cal.4th at p. 657, citing *People v. Wilcox* (1960) 53 Cal.2d 651, 654 (*Wilcox*).)

## II. Standards of Review

We review the denial of a motion to vacate a bond forfeiture and to exonerate the bond for an abuse of discretion. (*People v. Financial Casualty & Surety, Inc.* (2017) 10

Cal.App.5th 369, 378–379, citing *People v. Accredited Surety & Casualty Co.* (2016) 3 Cal.App.5th 1180, 1184.) "Certain fixed legal principles guide us in the construction of bail statutes. The law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail. [Citation.] Thus, sections 1305 and 1306 must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture." (*People v. Surety Ins. Co.* (1985) 165 Cal.App.3d 22, 26.) It is the surety's burden to prove the statutory prerequisites to an order vacating a bond forfeiture. (*People v. American Contractors Indemnity* (1999) 74 Cal.App.4th 1037, 1041.)

"Ordinarily, appellate courts review an order denying a motion to vacate the forfeiture of a bail bond under an abuse of discretion standard. [Citation.] When the appellate court is deciding only legal issues, however, such as jurisdictional questions and matters of statutory interpretation, the abuse of discretion standard does not apply. [Citation.] When the facts are undisputed and only legal issues are involved, appellate courts conduct an independent review." (*People v. International Fidelity Ins. Co.* (2012) 204 Cal.App.4th 588, 592.)

In this case, the facts are undisputed. Only legal issues are presented, and we therefore independently review the decision of the trial court.

## III. County's Standing to Claim Reimbursement

Appellants claim that the State of California, not County, is the obligee under the terms of the bail bond, and as such, County is not entitled to recover costs and expenses relating to extradition. The terms of the bail bond explain that if defendant does not appear or meet the other applicable conditions, then appellants "will pay to the *People of the State of California* the sum of [$75,000] .…" (Italics added.) Additionally, section 1306, subdivision (b), which governs compensation to the government for the costs of extradition, states, "[i]f a court grants relief from bail forfeiture, it shall impose a monetary payment as a condition of relief to compensate *the people* for the costs of returning a defendant to custody pursuant to Section 1305 .…" (Italics added.) Based on

6.

the language of the bail bond and the statute, appellants contend that only the State of California, not County, has standing to request compensation for the costs of extradition. Accordingly, this is a question of statutory interpretation regarding the meaning of the use of the term the "the people" in the context of section 1306, subdivision (b).

"[T]he language used in a statute or constitutional provision should be given its ordinary meaning, and '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).'" (*People v. Valencia* (2017) 3 Cal.5th 347, 357 (*Valencia*), quoting *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) To that end, we generally must "accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose," and have warned that "[a] construction making some words surplusage is to be avoided." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387 (*Dyna-Med*).)

"'[T]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' [Citation.] 'Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.'" (*Valencia*, *supra*, 3 Cal.5th at pp. 357–358, quoting *Dyna-Med*, *supra*, 43 Cal.3d at p. 1387.)

Section 1306, subdivision (b), states, "the people" are to be compensated for the costs of returning a defendant to custody. It is ordinarily known that criminal actions are prosecuted in the name of the People of the State of California even when the action is prosecuted by a local agency or municipality. Section 684 states, "A criminal action is prosecuted in the name of the people of the state of California, as a party, against the person charged with the offense."

7.

For well over 100 years, county district attorneys have acted as agents of the State of California to prosecute criminal cases. "'The district attorney in the discharge of the duties of his office performs two quite distinct functions. He is at once the law officer of the county and the public prosecutor. While in the former capacity he represents the county and is largely subordinate to, and under the control of, the board of supervisors, he is not so in the latter. *In the prosecution of criminal cases he acts by the authority and in the name of the people of the state.*'" (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 359, quoting *County of Modoc v. Spencer* (1894) 103 Cal. 498, 501, italics added.) "District attorneys act on behalf of the state when prosecuting crimes." (*Nguyen v. Superior Court* (1996) 49 Cal.App.4th 1781, 1787.)

"It may be conceded that for some purposes a district attorney is a county officer …. When, however, he conducts prosecutions for the punishment of crimes denounced by act of the legislature, he certainly discharges functions which pertain to the state and not to the county, whether or not, technically, he is to be deemed a state officer when he is engaged in the discharge of such functions. *Under such circumstances he surely acts as an agent of the state.*" (*Sloane v. Hammond* (1927) 81 Cal.App. 590, 599, italics added; see *Shepherd v. Superior Court* (1976) 17 Cal.3d 107, 122 [the district attorney "is a public officer, under the direct supervision of the Attorney General [citation], who 'represents the sovereign power of the people of the state, by whose authority and in whose name all prosecutions must be conducted'"].)

As a county district attorney is the public official that acts as an agent of the People of the State of California when prosecuting criminal cases, it likewise follows that it would be the entity that suffers the economic losses that occur during prosecution. The use of the term "the people" in section 1306, subdivision (b), when read in light of the understood meaning of the term in the context of criminal prosecutions in California would not reasonably be read to limit compensation to the state, when counties, in their capacity as agents of the state, conduct the criminal prosecution. We hold that

8.

section 1306, subdivision (b), entitles Counties, as agents of the State of California, to seek compensation for the costs of returning a defendant to custody.

Appellants also rely upon sections 1557 and 1558 for the proposition that County cannot be compensated for expenses of extradition from the exoneration of the bond. Section 1557 discusses compensation to cities and counties directly from the State of California for extradition expenses. The section places limits on the amount of compensation allowed from the State of California, including, for example, the amounts that can be spent on meals. (See § 1557, subd. (d)(1)–(3).) However, section 1557 is not applicable to the present situation. County did not request compensation from the state. Instead, the compensation was requested directly from the surety.

Appellants also argue that section 1558 limits the amount of recovery not just under section 1557, but also under section 1306, subsection (b). Section 1558 states, "No compensation, fee, profit, or reward of any kind can be paid to or received by a public officer of this state … for a service rendered in procuring from the Governor the demand mentioned in Section 1557, or the surrender of the fugitive, or for conveying him or her to this state, or detaining him or her therein, *except as provided for in that section….*" (Italics added.) Section 1558 clearly limits the compensation that can be recovered from the State of California for extradition to the costs and expenses expressly described in section 1557. By specifically and exclusively referencing section 1557, section 1558 should be interpreted based on its ordinary meaning to only apply to costs awarded under section 1557 from the state. While sections 1557 and 1558 limit compensation when sought from the state, no California court has interpreted the sections to limit the type or amount of recovery sought from a private entity acting as the surety of a bail bond.

Moreover, we note that appellants' argument is conceptually inconsistent. While appellants challenge County's costs associated with the wages of the officers, appellants concede that County should recoup its out-of-pocket costs related to travel expenses. If, as appellants contend, County was not the agency entitled to compensation under

9.

section 1306, subdivision (b), then County should not be entitled to any costs. Appellants provide no explanation as to why it would pay some, but not all, of County's costs if County was not legally entitled to any compensation.

## IV.    Compensation for Wages and Benefits

Next, appellants argue that County is not entitled to compensation for the salary and benefits of the officers for the time they traveled to extradite defendant.[5] The language of section 1306, subdivision (b), states that the court shall impose a monetary payment "to compensate the people for the costs of returning a defendant to custody" and "[t]he amount imposed shall reflect the actual costs of returning the defendant to custody."

Only one California case has addressed compensation under section 1306, subdivision (b). In *People v. Ranger Ins. Co.* (1992) 9 Cal.App.4th 1302 (*Ranger*), the county sought compensation for the 25 days that the defendant was held in jail after extradition. (*Id.* at p. 1304.) The court denied the costs of housing the defendant. It held that "by imposing an assessment representing the cost of housing and caring for [the defendant] *after* her return to custody, the trial court went beyond its jurisdiction under [section 1306, subdivision (b)]." (*Id.* at p. 1308.) The court reasoned that "[t]he object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court. In matters of this kind there should be no element of revenue to the state nor punishment of the surety. [Citation.]'" (*Ibid.*, quoting *Wilcox*, *supra*, 53 Cal.2d at pp. 656–657.) Accordingly, "[a]n assessment for the housing and care costs of a defendant who has been returned to custody does not comport with the purpose of bail forfeiture." (*Ranger*, *supra*, at p. 1308.)

---

[5]    The claim sought compensation for 20 hours of wages and benefits and two hours of overtime wages.

10.

Unlike the costs requested in *Ranger*, the wages of the officers here directly relate to costs County incurred to extradite defendant. In order to extradite defendant, County lost the use of the officers to their regular law enforcement duties. However, County was still required to pay those officers and facilitate their absence. The payment of wages and benefits of the officers is a cost directly related to extraditing defendant that it would not have incurred had appellants returned defendant to custody. As argued by County, "the surety's obligation in such a circumstance is to make the local authorities whole as if they never had to make the trip out of state to retrieve the Defendant." Without compensating for the wages and benefits of the officers, the respondent argues that counties would be burdened with the costs of extradition, which would act as a deterrent to the county to conduct future extraditions and would provide more incentive for fugitives to attempt to flee from the jurisdiction.

Based on our independent review, we agree with the holding of the trial court. (*People v. International Fidelity Ins. Co.*, *supra*, 204 Cal.App.4th at p. 592.) Specific costs associated with extradition are not defined by section 1306, subdivision (b). Had the Legislature intended to exclude the costs of the wages and benefits of the officers, it could have specifically stated so in the statute. The Legislature did so in itemizing the recoverable costs from the state in section 1557. The Legislature could have likewise itemized the recoverable costs in section 1306, subdivision (b), but chose not to.

Appellants had the burden to present legal authority describing why the language of section 1306, subdivision (b), would not allow for the costs associated with the wages and benefits of officers engaged in the extradition process. (See *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655.) While this court is not obligated to independently find support for appellants' claims, we found no such authority. (*Ibid.*) Accordingly, we affirm the award of costs under section 1306, subdivision (b).

11.

## DISPOSITION

The judgment is affirmed.  Respondent is entitled to its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

_____

MEEHAN, J.

WE CONCUR:


_____

PEÑA, Acting P.J.


_____

DESANTOS, J.

Filed 1/16/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THE NORTH RIVER INSURANCE COMPANY,<br><br>    Defendant and Appellant;<br><br>BAD BOYS BAIL BONDS<br><br>    Real Party in Interest and Appellant. | F075035<br><br>(Stanislaus Super. Ct. No. 2064175)<br><br><br>**ORDER GRANTING REQUESTS FOR PUBLICATION** |

As the nonpublished opinion filed on December 19, 2018, in the above entitled matter hereby meets the standards for publication specified in the California Rules of Court, rule 8.1105(c), it is ordered that the opinion be certified for publication in the Official Reports.


MEEHAN, J.

WE CONCUR:


PEÑA, Acting P.J.


DeSANTOS, J.

1.